# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **KRISTY D. THACKER,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 7:20-cv-01347-RDP |
| **KILOLO KIJAKAZI,** | } |
| **Acting Commissioner of** | } |
| **Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Kristy D. Thacker brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

On May 18, 2018, Plaintiff filed applications for disability, DIB, and SSI, alleging a disability onset date of June 1, 2014 (which was later amended to July 4, 2015). (Tr. 302, 374–75, 448–55). Plaintiff's applications were initially denied. (Tr. 376–80). On October 5, 2018, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 383). That request was granted, and a video hearing was held on October 7, 2019, before ALJ George W. Merchant. (Tr.

302, 310). Plaintiff, her attorney, and Vocational Expert ("VE") Otis Pearson were present at the hearing. (Tr. 317).

In the ALJ's decision dated December 13, 2019, the ALJ determined that Plaintiff had not been under a disability, as defined in the Act, from July 4, 2015 through the date of his decision. (Tr. 310). The Appeals Council denied Plaintiff's request for review. (Tr. 6). Accordingly, the ALJ's decision became the final decision of the Commissioner and, therefore, a proper subject of this court's appellate review. (Tr. 6)

At the time of the hearing, Plaintiff was forty-five-years old with a tenth-grade education and nearly three years of trade school. (Tr. 323–24). Plaintiff was enrolled in special education classes while in school and had previously worked as a housekeeper and caretaker. (Tr. 309, 477). Plaintiff alleges that her ability to work is limited by diabetes, severe migraines, high blood pressure, chronic obstructive pulmonary disease ("COPD"), undiagnosed back pain, congestive heart failure, high cholesterol, insomnia, depression, bad nerves, blurry vision, and neuropathy of the hands, legs, and feet. (Tr. 476).

For purposes of this court's review, Plaintiff's medical records begin in July 2015 when she was transported to DCH Regional Medical Center, where she was admitted for chest pain and treated for a myocardial infarction. (Tr. 806–37). As part of her treatment, she was prescribed nitroglycerin for chest pains and two stents were placed in her heart. (*Id.*). Following her procedure, a physician recommended smoking cessation and other risk factor modifications as part of Plaintiff's recovery plan. (Tr. 826). Plaintiff testified that following this visit, she continued to experience chest pains for which she repeatedly sought treatment. (Tr. 329).

In October 2015, Plaintiff returned to DCH Regional Medical Center again reporting chest pains. (Tr. 803). Plaintiff underwent testing but showed no signs of edema or shortness of breath. (Tr. 786–805). Plaintiff was discharged two days later after reporting no chest pain. (*Id.*).

In September 2016, Plaintiff visited Fayette Medical Center, reporting severe pain in her lower extremities as well as her lower back rated at a nine out of ten. (Tr. 656–70). Dr. Gene E. Walker reported that Plaintiff showed no real back pain with a painless range of motion and no edema in her extremities. (Tr. 667–69). Plaintiff was diagnosed with peripheral neuropathy and discharged the same day with a prescription for pain relievers. (Tr. 669). It was noted that Plaintiff had recently stopped taking her diabetic medications after her prescription ran out. (*Id.*). Plaintiff presented to Fayette Medical Center on several other occasions from October 2016 to January 2018 with complaints of shortness of breath, a cough, and a migraine. (Tr. 612, 620–26, 632–36, 637, 648, 651). On each visit, Plaintiff was discharged the same day in an improved or stable condition with no apparent significant abnormalities. (*Id.*).

In August 2017, Plaintiff presented to DCH Regional Medical Center with complaints of chest pain. (Tr. 743, 748). Plaintiff was discharged two days later in good condition with diagnoses of diastolic congestive heart failure, subendocardial ischemia, malignant hypertension, demand ischemia, neuropathy associated with type 2 diabetes mellitus, diabetic angiopathy, diabetes mellitus with hyperglycemia, and complicated bereavement. (*Id.*). Plaintiff was prescribed blood pressure, edema, pain, and anxiety medications. (Tr. 748, 749).

On December 21, 2017, Plaintiff presented to Whatley Health Services for diabetes, hypertension, and depression. (Tr. 560). Regarding hypertension, Plaintiff's records indicate that her blood pressure was not high, so her medication was decreased. (Tr. 564). Regarding her diabetes mellitus, the physician wanted to assess Plaintiff after three months of consistent

3

medication use. (Tr. 564). Plaintiff was advised to continue her medication, stop smoking, and begin a diet plan including exercise. (Tr. 564). Plaintiff returned to Whatley Health Services for a follow-up visit on February 6, 2018, as directed. (Tr. 566).

On April 10, 2018, Plaintiff presented to the Fayette Medical Center emergency room with complaints of shortness of breath. (Tr. 574). Plaintiff was diagnosed with respiratory failure, coronary artery disease, diabetic neuropathy, and chronic back pain, and, upon discharge, it was noted that Plaintiff was in fair condition. (Tr. 600). Shortly thereafter, on April 12, a chest x-ray indicated no signs of acute abnormalities. (Tr. 606). Dr. Martha J. Christian noted that she suspected a new blockage was causing Plaintiff's increased cardiac issues (including the previously diagnosed respiratory failure). (Tr. 601).

The following day, Plaintiff was transported to DCH Regional Medical Center for further cardiology evaluation. (Tr. 601). Plaintiff was diagnosed with sepsis, pneumonia, acute bronchitis with COPD, heart failure with preserved ejection fraction, pulmonary edema, morbid obesity, and a tobacco-use disorder. (Tr. 710–11). On April 16, 2018, Plaintiff was discharged with a treatment plan consisting of smoking cessation, diet and exercise, and an adjustment to her insulin dosage. (Tr. 711, 715, 716).

A month later, Plaintiff presented to the Fayette Medical Center emergency room with chest pain, swollen feet, and shortness of breath. (Tr. 853). She rated her chest pain as a nine out of ten. (*Id.*). But, after she was administered nitroglycerin, Plaintiff rated her pain at zero. (*Id.*). Dr. Edmond Karoun Safarian noted that Plaintiff was completely asymptomatic since her arrival at Fayette Medical Center other than slight residual shortness of breath. (Tr. 857). Chest imaging showed normal heart size and fully expanded lungs with no pleural effusions. (Tr. 863). Plaintiff

was diagnosed with angina pectoris without myocardial infarction and discharged the same day. (Tr. 861).

Plaintiff visited Fayette Medical Center again in November 2018 for a persistent cough and wheezing. (Tr. 960). Chest imaging again showed no abnormal findings, and Plaintiff was instructed to stop smoking. (Tr. 965, 969). Plaintiff returned to Fayette Medical Center in December 2018 for sharp leg pain and intermittent swelling. (Tr. 907). Dr. Christopher Smith noted a primary impression of acute bilateral low back pain with a secondary impression of poorly controlled diabetes mellitus. (Tr. 912, 913). Imaging of Plaintiff's extremities showed no deep vein thrombosis. (*Id.*). In July 2019, Plaintiff presented again to Fayette Medical Center with chest pain that was partially relieved by nitroglycerin. (Tr. 976). Imaging showed no abnormal findings, but Plaintiff was transferred to DCH Regional Medical Center for further cardiology evaluation (Tr. 996, 998).

While at DCH, Plaintiff's coronary artery disease was noted as stable. (Tr. 1013). Plaintiff underwent procedures in which a stent was placed in her left circumflex artery. (Tr. 1037, 1087, 1088, 1103). Plaintiff's condition was stable following the procedure; there were no signs of edema; and Plaintiff reported no chest pain or shortness of breath. (Tr. 1102). Plaintiff's chest x-rays revealed no acute pulmonary or pleural disease. (Tr. 1168). Plaintiff indicated that her chest pain occurred on an irregular basis and that nitroglycerin partially relieved the pain. (Tr. 1125). The day following the procedure, Plaintiff was discharged in stable condition and diagnosed with a non-ST elevated myocardial infarction. (Tr. 1066–68, 1072). Plaintiff's treatment plan consisted of a diabetic diet, smoking cessation, and a follow-up with a cardiologist. (*Id.*).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If these criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If a claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. Before continuing to step four, the ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ determines whether

the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 4, 2015 (Plaintiff's onset date). (Tr. 304). At step two, the ALJ found that Plaintiff has the following severe impairments: diabetes mellitus, type II; obesity; coronary artery disease status post myocardial infarction with stenting; and congestive heart failure. (Tr. 304–07). However, the ALJ determined that those impairments -- or a combination of those impairments -- do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 307).

After considering the entire record, the ALJ found that Plaintiff has the RFC to perform the full range of light work as defined in 20 C.F.R. § § 404.1567(b) and 416.967(b). (Tr. 307). In making this determination, the ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 308). At step four, the ALJ found that Plaintiff is not capable of performing her past relevant work as either a caretaker or housekeeper, both of which are performed at the medium-work level. (Tr. 309). At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 309–10). Accordingly, the ALJ concluded that Plaintiff had not been under a disability as defined

in the Act from July 4, 2015 (Plaintiff's onset date) through the date of the ALJ's decision. (Tr. 310).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff presents one argument: The ALJ failed to properly consider Plaintiff's subjective complaints of pain, shortness of breath, swelling of the lower extremities, and fatigue. (Doc. # 16 at 9).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence is explained as "the Commissioner's factual findings [being] more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that

judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

As a result, when addressing the ALJ's credibility determination regarding a claimant's subjective pain testimony, this court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Cates v. Comm'r of Soc. Sec.*, 752 F. App'x 917, 920 (11th Cir. 2018) (citing *Foote*, 67 F.3d at 1562); *see also Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 656-57 (11th Cir. 2020) ("[C]redibility determinations are the province of the ALJ.") (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)). "The question is not . . . whether [the] ALJ could have reasonably credited [the] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

**V.    Discussion**

When a plaintiff alleges disability based on her pain, the Eleventh Circuit applies a three-part "pain standard." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Under that standard, a plaintiff must show "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Thus, if a plaintiff testifies to disabling pain and satisfies two parts of the three-part pain standard, the ALJ must make a finding of disability *unless* the ALJ properly discredits a plaintiff's testimony. *See Thomas v. Comm'r of Soc. Sec. Admin.*, 2020 WL 7352571, at *2.

If the ALJ determines that a plaintiff's subjective pain testimony is inconsistent with the objective medical evidence, then "the ALJ 'must clearly articulate explicit and adequate reasons

for discrediting the claimant's allegations of completely disabling symptoms.'" *Bailey v. Soc. Sec. Admin., Comm'r*, 791 F. App'x 136, 141 (11th Cir. 2019) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)); *see also Foote*, 67 F.3d at 1562 (providing "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding"). But "the ALJ need not cite 'particular phrases or formulations' . . . rather [only] 'enough to enable [the court] to conclude that the ALJ considered [a plaintiff's] medical condition as a whole.'" *Chatham*, 764 F. App'x at 868 (quoting *Foote*, 67 F.3d at 1562); *see also Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 677-78 (11th Cir. 2020) (finding the ALJ's credibility determination was supported by substantial evidence due to a plaintiff's ability to do basic daily activities, effectiveness of medication, conservative treatment plan, and "imaging with unremarkable results").

In this case, the ALJ noted that, after considering the evidence, Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 308). However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record."[1] (*Id.*). In making this decision, the ALJ examined the objective medical evidence and other evidence in the record (*i.e.*, Plaintiff's treatment history and daily activities). (*Id.*).

The ALJ specifically articulated (1) that "[m]ultiple chest x-rays in 2018 are normal and indicate no acute findings"; (2) that "[t]here is no evidence of pleural disease or any significant change in [Plaintiff's] lungs in the aforementioned imaging"; (3) that "[i]maging of [Plaintiff's]

---

[1] While the ALJ later wrote, "As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with or *supported* by the medical evidence of record," it is clear from the context that the ALJ meant to say *unsupported* by the medical evidence of record. (Tr. 308).

10

bilateral lower extremities found on December 14, 2018, found that she did not have deep vein thrombosis"; (4) that [t]reatment at both DCH Regional Medical Center and Fayette Hospital on July 29, 2019, note that [Plaintiff's] coronary artery disease is stable and that her alleged chest pain does not appear to be associated with activity"; and (5) that "there are consistently no reported musculoskeletal or neurological limitations reported" despite complaints of foot and leg pain. (Tr. 308). The ALJ also explained that treatment notes following the July 2019 heart procedure indicate that Plaintiff was stable. (*Id.*). And, the ALJ articulated that Plaintiff consistently fails to follow her treatment plans (*i.e.*, smoking cessation and dietary recommendations). (*Id.*).

Again, this court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Cates*, 752 F. App'x at 920. The court, instead, asks "whether the ALJ was clearly wrong to discredit [Plaintiff's subjective pain testimony]." *Werner*, 421 F. App'x at 939. Here, the court cannot say the ALJ's decision was not clearly wrong.

This court has reviewed the entirety of the record and concludes that the ALJ's decision to discredit Plaintiff's subjective testimony of pain is supported by substantial evidence. For instance, Plaintiff's medical record in September 2018 shows that she reported no shortness of breath while walking or inactive. (Tr. 934). And, the reasons articulated by the ALJ are consistent with the record. The ALJ also correctly applied the Eleventh Circuit's legal principles regarding the three-part pain standard. Accordingly, the court will not disturb the ALJ's determination to discredit Plaintiff's subjective statements of pain, shortness of breath, swelling of the lower extremities, and fatigue regarding the intensity, persistence, and limiting effects. As this argument was the only one presented to the court, the decision of the Commissioner is due to be affirmed.

## VI.     Conclusion

The court concludes that the ALJ applied the proper legal standard and that the ALJ's determination to discredit Plaintiff's subjective pain testimony is supported by substantial evidence. The Commissioner's final decision is, therefore, due to be affirmed.

A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 23, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE